UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **DARRELL WILLIAMS** | **CASE NO. 3:24-CV-01228** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **BERRY GLOBAL INC** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

MEMORANDUM RULING

Pending before the Court is a Motion for Summary Judgment [Doc. No. 21] filed by Defendant, Berry Global Inc., ("Berry"). Plaintiff, Darrell Williams ("Williams"), opposes the Motion [Doc. No. 23]. Berry filed a reply [Doc. No. 24].

After carefully considering parties' filings and applicable law, the Motion is **GRANTED IN PART** and **DENIED IN PART**.

I. Background

This is an employment discrimination suit. Berry hired Williams "on or around December 15, 2020, as a Material Handler" in Berry's Monroe Warehouse.[1] During his employment, Williams reported to Billy Pate ("Pate").[2] Sherri Shoemaker ("Shoemaker") was Berry's "Human Resources Manager at the time."[3]

Williams agreed to Berry's Location Specific Attendance Policy[4] (the "Policy") as part of his employment.[5] Per the Policy, employees would receive "attendance points" for various infractions.[6] The Policy exempt state and federal sick leave laws

---

[1] [Doc. No. 1, at ¶¶ 5, 11–12].
[2] [Id. at ¶ 12].
[3] [Doc. No. 21-1, p. 7].
[4] [Doc. No. 21-5].
[5] [Doc. No. 21-1, p. 6].
[6] [Doc. No. 21-5, p. 2].

but required employees to provide "appropriate medical documentation to Human Resources" when seeking coverage under these laws.[7] The Policy also provided the following "corrective discipline" measures:

> Employees who accumulate 6.5–7 points within the rolling twelve-month period are given a written warning.
> Employees who accumulate 7.5–8 points within the rolling twelve-month period are given a second written warning.
> Employees who accumulate 8.5–9 points within the rolling twelve-month period are given a last clear chance agreement ("LCA").
> Employees who accumulate more than 9 points within the rolling twelve-month period are terminated.[8]

Williams accumulated two points within his first month of employment. He was marked absent on January 16, 2021, and January 30, 2021,[9] for reasons he does not remember.[10] Then, the next month, Williams accumulated two more points on February 13 and 14,[11] to which he avers that snow and ice made it impossible for him to reach work.[12] That April, Williams received three more points. On April 6, he did not arrive at his 7:00 p.m. shift, but provided a doctor's note, which indicated a visit at 9:45 a.m. for a mole but indicated nothing on his ability to work.[13] Then, on April 17, he did not show up for work, believing he was "off" that night.[14] Finally, he left 40 minutes into his shift on April 27, 2021, which he disputes.[15] So, by May 2021, Williams had accumulated seven (non-disability-related) attendance points.

---

[7] [Id.].
[8] [Id. at p. 3].
[9] [Doc. No. 23-4, p. 12].
[10] [Doc. No. 21-2, p. 17].
[11] [Doc. No. 23-4, p. 12].
[12] [Doc. No. 21-2, p. 17].
[13] [Doc. No. 23-4, p. 12]; [Doc. No. 21-10, p. 2].
[14] [Doc. No. 23-4, p. 12]; [Doc. No. 21-9, pp. 2, 28].
[15] [Doc. No. 23-4, p. 12]; [Doc. No. 21-2, p. 18].

On May 13, 2021, Williams sought a leave of absence to get his March 2021-shoulder injury treated.[16] Berry granted Williams a thirteen-day leave of absence until May 26, 2021, after reviewing his doctors' notes, one of which "indicated Williams could return to work on May 27, 2021, without restrictions."[17] After returning from medical leave, Williams accumulated two more attendance points. First, on June 2, 2021, for a reason he does not remember.[18] Then, on June 28, 2021, he missed his shift again, providing an emergency room treatment slip but with no time stamp or work restrictions.[19] Berry issued Williams an LCA, which he did not sign.[20] He also missed four days in mid-July, but he provided a doctor's note that explained Williams' shoulder was treated at the time.[21] So, these days did not count to his points. But on July 28, 2021, Williams had another unexcused absence, his tenth attendance point.[22] Shoemaker, however, did not run an attendance report in July 2021 and thus did not discover Williams' unexcused absence.[23]

Williams eventually informed Berry he needed additional medical leave since he had a shoulder surgery scheduled on August 4, 2021.[24] He returned to work after his surgery on October 25, 2021, after the doctor released him "with no restrictions."[25] Shoemaker ran the next attendance report after Williams returned, which showed he

---

[16] [Doc. No. 21-1, p. 8]
[17] [Id.]; [Doc. No. 21-12, p. 2].
[18] [Doc. No. 23-4, p. 12]; [Doc. No. 21-2, p. 19].
[19] [Doc. No. 23-4, p. 12]; [Doc. No. 21-9, p. 30].
[20] [Doc. No. 21-9, p. 32].
[21] [Doc. No. 23-4, p. 12]; [Doc. No. 21-9, p. 36].
[22] [Doc. No. 23-4, p. 12].
[23] [Doc. No. 21-9, p. 4].
[24] [Doc. No. 21-13, p. 2].
[25] [Doc. No. 21-18, p. 2].

had accumulated more than nine attendance points.[26] Due to staffing shortages, however, Berry issued Williams a second LCA in lieu of termination, on November 4, 2021, specifically noting that any "further violation of the Attendance Policy in the next 90 days will result in termination."[27]

On January 29, 2022, Williams missed his shift due to his grandfather's funeral, but did not follow Berry's Bereavement Policy, which required notifying and coordinating with Williams' "Supervisor and the Human Resources Department."[28] Since Williams only informed Shoemaker after-the-fact, he received an additional attendance point.[29] Still, Berry did not fire Williams, but put him on probation on March 10, 2022.[30] Williams refused to sign the probation form, which said any further "attendance violation in the next 90 days will result in immediate termination."[31]

Sometime in April 2022, Williams allegedly applied for a higher position at Berry.[32] When Berry hired someone else for that position, Williams asked Pate why the job went to someone else.[33] Pate responded that Williams' attendance issues and LCA-status likely kept him "out of the running."[34] On April 23, 2022, Williams informed Pate that he would be late for his shift that day.[35] When Pate informed

---

[26] [Doc. No. 21-9, p. 4].
[27] [Id. at p. 38].
[28] [Doc. No. 21-20, p. 2].
[29] [Doc. No. 23-4, p. 7].
[30] [Id. at p. 6].
[31] [Id.].
[32] [Doc. No. 23, p. 27].
[33] [Id. at p. 28]; [Doc. No. 23-5, p. 27].
[34] [Doc. No. 23, p. 28]; [Doc. No. 23-5, p. 27].
[35] [Doc. No. 21-23, p. 2].

Shoemaker of Williams' tardiness, Shoemaker said, "This will get him a termination, he was put on 90 day probation on 3/10. I will process it with the other write ups."[36]

Shoemaker finished processing Williams' termination on May 4, 2022.[37] Shoemaker was then out of the office, and Williams did not show up to work on May 7 and 8.[38] On May 9, 2022, Williams texted Shoemaker to request further leave.[39] Shoemaker then called Williams on May 10, 2022, to inform him that he was fired.[40]

Williams then "timely filed a charge of discrimination with the Equal Employment Opportunity Commission" ("EEOC").[41] The EEOC issued a finding of cause that determined Williams was disabled under the Americans with Disabilities Act ("ADA") and Berry violated his ADA and Title VII rights.[42] Williams then filed this suit, seeking claims under Title VII of the Civil Rights Act and 42 U.S.C. § 1981 (for race discrimination), and the ADA (for disability discrimination, failure to accommodate, and retaliation).[43]

Berry, in this Motion, argues all of Williams' claims should be dismissed as there are no materials facts at dispute and they are legally entitled to judgment.[44]

The parties briefed all relevant issues, and the matter is ripe.

---

[36] [Id.].
[37] [Doc. No. 21-9, p. 42].
[38] [Id. at p. 5].
[39] [Doc. No. 23-5, p. 18].
[40] [Doc. No. 23-3, pp. 4–5].
[41] [Doc. No. 1, at ¶ 9].
[42] [Doc. No. 23-9].
[43] [Doc. No. 1, at ¶¶ 10, 47–65].
[44] [Doc. No. 21].

## II. Law and Analysis

### A. Standard of Review

A court will grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the movant meets their initial burden of showing no genuine issue of material fact, "the burden shifts to the nonmoving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc.*, 738 F.3d 703, 706 (5th Cir. 2013) (citation modified). A fact is "material" when proof of its existence or nonexistence would affect the lawsuit's outcome under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, "the mere existence of some alleged factual dispute will not defeat an otherwise properly supported motion for summary judgement." *Id.* at 247–48. And a dispute about a material fact is "genuine" only if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). But summary judgment is appropriate when the evidence is "merely colorable or is not significantly probative." *Anderson*, 477 U.S. at 249 (1986) (citation modified).

Moreover, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citation modified).

Courts "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *Total E & P USA Inc. v. Kerr–McGee Oil and Gas Corp.*, 719 F.3d 424, 434 (5th Cir. 2013) (citations omitted).

Finally—and importantly—there can be no genuine dispute as to a material fact when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof of trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

### B. Analysis

Williams brings multiple claims under different theories, and the Court analyzes each in turn.

#### 1. ADA Failure to Accommodate

The ADA declares, "No covered entity shall discriminate against a qualified individual on the basis of disability in regard to" employment matters. 42 U.S.C. § 12112(a). This includes not making reasonable accommodations to "the known limitations of an employee's disability," "unless it would impose an undue hardship on the" covered entity. *Clark v. Champion Nat'l Sec., Inc.*, 952 F.3d 570, 587 (5th Cir. 2020) (citation omitted); 42 U.S.C. § 12112(b)(5)(A). Under *Sutton v. United Air Lines, Inc.*, courts must make an individualized determination of whether an employee's impairment constitutes a disability. 527 U.S. 471, 483 (1999).

Williams "must prove all of the following statutory elements to prevail in his failure-to-accommodate claim: (1) he is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered employer; and

(3) Berry failed to make reasonable accommodations for such known limitations." *Clark*, 952 F.3d at 587 (citation modified). And "where the disability, resulting limitations, and necessary reasonable accommodations, are not open, obvious, and apparent to the employer, the initial burden rests primarily upon the employee to specifically identify the disability and resulting limitations, and to suggest the reasonable accommodations." *Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 224 (5th Cir. 2011) (citation omitted).

Williams proffers two bases for his failure to accommodate claim. First, that Berry did not reasonably accommodate Williams' physical therapy appointments.[45] Second, that Berry subjected Williams to their "points-based attendance policy" without considering their "duty reasonably accommodate" his disability.[46] Both fail.

Williams' shift at Berry's warehouse was from 7:00 p.m. to 7:00 a.m.[47] But, as Berry shows, Williams' physical therapy appointments were at noon or 8:00 a.m., outside his work's hours.[48] Williams has also failed to offer any evidence on how his appointments would limit his ability to attend work.[49] As such, Williams cannot show his "disability and its consequential limitations were known by" Berry. *Clark*, F.3d at 587. So, Williams' claim that Berry did not accommodate his physical therapy fails.

Williams requested—and Berry granted—close to a month's worth medical leave days for Williams' shoulder consultation and subsequent surgery.[50] Berry also

---

[45] [Doc. No. 1, at ¶ 57].
[46] [Id. at ¶ 58].
[47] [Doc. No. 21-2, p. 10].
[48] [Doc. No. 21-19, p. 2].
[49] *See generally* [Doc. No. 23, pp. 19–22].
[50] [Doc. No. 21-1, pp. 8, 10].

did not issue points for Williams' absences on July 17–19, 2021, since Williams provided a doctor's note that stated the doctor treated Williams' shoulder on those dates.[51] Nevertheless, Williams argues Berry violated his rights because Berry's corporate representative, Marty Blame, testified that "in the event that an employee's medical condition is deemed as an ADA-qualifying event, we cannot assign that employee attendance points based on absences."[52] Subtracting Williams' absences for disability reasons, however, Williams' attendance points for non-disability-related reasons far exceeded the minimum amount allowed by the Policy before termination. In fact, the points contributing to his termination resulted from non-disability-related reasons[53] or unknown reasons.[54] Since Williams cannot show he received points for ADA-qualifying events, he cannot show Berry "failed to make reasonable accommodations for" his "known limitations." *Clark*, 952 F.3d at 587. So, his second claim also fails.

Williams also raises—for the first time in his response to Berry's Motion—that Berry did not accommodate his post-surgery shoulder issues.[55] Specifically, that Berry continued to make him "pull loads at the warehouse."[56] Even if this argument

---

[51] [Id. at p. 10].
[52] [Doc. No. 21-3, p. 9].
[53] Williams missed two days in February 2021, allegedly because of weather conditions. [Doc. No. 21-2, p. 17]. He missed work on April 2, 2021, for a morning mole-related doctor's appointment that did not suggest he could not work that night. [Doc. No. 21-10, p. 2]. He did not go to work on April 12, 2021, because he thought he was off. [Doc. No. 21-9, pp. 2, 28]. He disputes that he left 40 minutes into his shift on April 27, 2021. [Doc. No. 21-2, p. 18]. He visited an ER on June 28, 2021, but did not provide a timestamp or note with a work restriction. [Doc. No. 21-9, p. 30]. He did not follow proper procedures when requesting time off for a funeral on January 29, 2022. And, finally, he was late on April 23, 2022, due to mechanical issues with his vehicle. [Doc. No. 21-23, p. 2].
[54] Williams does not remember or know why he was absent on January 16, 2021; January 30, 2021; June 2, 2021; and July 28, 2021. [Doc. No. 21-2, pp. 17, 19].
[55] [Doc. No. 23, p. 20].
[56] [Id. (internal quotation marks omitted)].

was properly raised, it does not support Williams. Williams was released post-surgery "with no restrictions."[57] Williams testified that Berry, nevertheless, allowed him to do less strenuous tasks when they could cover for him.[58] As such, Williams has again not shown Berry "failed to make reasonable accommodations for" his "known limitations." *Clark*, 952 F.3d at 587. Thus, Berry's Motion is **GRANTED** as to Williams' claim for failure to accommodate.

### 2. ADA Discriminatory Termination

"In a discriminatory-termination action under the ADA, the employee may either present direct evidence that he was discriminated against because of his disability or alternatively proceed under the burden-shifting analysis first articulated in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973)." *Clark*, 952 F.3d at 579 (citation modified). Williams relies on both theories.[59]

#### a. Direct Evidence

The Fifth Circuit has characterized that "direct evidence is rare." *Id.* (citation modified). Direct evidence is "evidence which, if believed, proves the fact without inference or presumption." *Id.* (citation omitted). In employment law contexts, a "statement or document which shows on its face that an improper criterion served as a basis—not necessarily the sole basis, but a basis—for the adverse employment action is direct evidence of discrimination." *Id.* (citation modified).

---

[57] [Doc. No. 21-18, p. 2].
[58] [Doc. No. 21-2, pp. 58, 61].
[59] [Doc. No. 23, pp. 13, 22].

Williams' case for direct evidence is limited to two statements made by Shoemaker—(1) a redacted email wherein Shoemaker stated something along the lines that she knew Williams should not receive attendance points for shoulder-related absences,[60] and (2) a text from Shoemaker stating, "A doctor's note does not keep you from getting [attendance] points."[61]

When a plaintiff offers remarks as direct evidence, courts must "apply a four-part test to determine whether they are sufficient to overcome summary judgment." *Id.* at 581 (citation omitted). To qualify as direct evidence of discrimination, the remark must be "1) workplace comments; 2) related to the protected class of persons of which plaintiff is a member; 3) proximate in time to the terminations; 4) made by an individual with authority over the employment decision at issue; and 5) related to the employment decision at issue." *Id.* (citation modified).

Shoemakers' remarks satisfy prongs one, two, and four. But they fail on the third prong because they were stated after Williams' termination and months before his termination, respectively. Even if the remarks were deemed "proximate in time to" Berry's termination, the remarks are not related to that "employment decision." *Id.* The context of the first remark is unknown, and the second remark responded to Williams' text requesting attendance-point exemption based on a doctor's note. Thus, Williams has not established his burden of showing Shoemaker's remarks are direct evidence of discrimination.

---

[60] [Doc. No. 23, pp. 14–15]; [Doc. No. 23-7, p. 8].
[61] [Doc. No. 23-5, p. 19].

### b. *McDonnell Douglas*

Although Williams—like most disability discrimination plaintiffs—does not show direct evidence of discrimination, "he may still 'proceed under the burden-shifting analysis first articulated in *McDonnell Douglas*.'" *Id.* at 582. (citation omitted). Under *McDonnell Douglas*, the plaintiff must first show a *prima facie* case of discrimination. *Id.* "To establish a prima facie discrimination claim under the ADA, a plaintiff must prove: (1) that he has a disability; (2) that he was qualified for the job; and (3) that he was subject to an adverse employment decision on account of his disability." *Id.* Once the plaintiff makes a *prima facie* case, the defendant must articulate a legitimate, nondiscriminatory reason for terminating the plaintiff. *Id.* n.44. (citation omitted). "The burden then shifts back to the plaintiff to show that the defendant's proffered reason is pretextual." *Id.*

The parties seemingly do not dispute whether Williams was disabled or qualified.[62] So, the Court focuses on the third prong: whether Williams was fired on account of his disability. Williams says yes. In support, he highlights that he was terminated "one day after submitting a request for time off for another nerve study for his shoulder disability," which, he argues, was "an event that highlighted [his] ADA-protected disability."[63] The Court agrees. The Fifth Circuit case that Williams cites, *Gosby v. Apache Indus. Servs., Inc.*, held that the temporal proximity principle from retaliation contexts also applies to discrimination cases. 30 F.4th at 572. Here,

---

[62] [Doc. No. 21-1, p. 20]; [Doc. No. 23, p.22].
[63] [Doc. No. 23, p. 22 (quoting *Gosby v. Apache Indus. Servs., Inc.*, 30 F.4th 523, 527 (5th Cir. 2022))].

the one-day "temporal proximity" between Williams requesting more time off and Berry firing him is sufficient to make the *prima facie* case.

Berry must now provide a legitimate, nondiscriminatory reason for firing Williams. *Clark*, 952 F.3d at 582 n.44 (citation omitted). They do. Specifically, Berry points to Williams' voluminous absence and tardy record for which Berry could have fired Williams well before they did.[64] Rather, Berry gave him multiple second chances and finally decided to fire him—before he requested further time off—for another attendance violation.[65] Since Berry has met its burden, Williams must overcome it.

Williams has not shown any evidence—let alone "substantial evidence"—that Berry's proffered nondiscriminatory reason for firing him was pretextual. *Gosby*, 30 F.4th at 572. He argues that two emails by Shoemaker support his position.[66] The first email, from Shoemaker to Pate, stated, "I have received a fax from [Williams'] doctor that states he does not have any restrictions at this time. Any time he calls in he will receive points per the attendance policy."[67] The second email, from Shoemaker to Lori Faubion, stated, "[Williams] has had some medical issues and he has not been given points for any time off covered by doctor's notes."[68] Williams seemingly argues this "sudden change" constitutes pretext. The Court is not persuaded. The record reflects both statements by Shoemaker were true—Williams did not receive

---

[64] [Doc. No. 21-1, pp. 20–21].
[65] [Doc. No. 21-23, p. 2].
[66] [Doc. No. 23, p. 23].
[67] [Doc. No. 23-7, p. 1].
[68] [Id. at p. 6].

attendance points for medically-covered absences but received them for non-medically-covered absences.[69] And Williams has not pointed what pretext exists.

Since Williams has not demonstrated Berry's proffered nondiscriminatory reason for terminating him was pretextual, he fails to make a claim for disability discrimination under *McDonnell Douglas* as well. Accordingly, the Motion is **GRANTED** as to Williams' claims for ADA-based discrimination.

### 3. ADA Retaliation

Williams again relies on both direct discrimination and the *McDonnell Douglas* framework for his ADA retaliation claims.[70]

#### a. Direct Evidence

On his direct evidence of retaliation argument, Williams only states: "Shoemaker's requests further reflect an understanding that it was wrong for her to retaliate against Mr. Williams for his accommodation request on May 9, 2022, which is among the 'protected activity' encompassed in his retaliation claim."[71] Assuming this refers to Shoemaker's text to Williams, asking that he call her the day after he requested time off for his nerve study,[72] it is not a statement, "which shows on its face" that retaliation for Williams seeking additional time off was the reason for his termination *Clark*, 952 F.3d at 579 (citation omitted). There are many inferential steps at play before one can make such a connection. *Id.* Hence, Williams has not met his burden of showing direct evidence of retaliation.

---

[69] *See supra* notes 50–54 and accompanying text.
[70] [Doc. No. 23, pp. 23, 25].
[71] [Id. at p. 23].
[72] [Doc. No. 23-5, p. 18].

### b. *McDonnell Douglas*

Even so, Williams can still make a valid retaliation claim under *McDonnell Douglas*. To show unlawful retaliation under *McDonnell Douglas*, "a plaintiff must establish a *prima facie* case of (1) engagement in an activity protected by the ADA, (2) an adverse employment action, and (3) a causal connection between the protected act and the adverse action." *Id.* at 588 (citation omitted). Once the plaintiff makes a *prima facie* case, "the defendant must come forward with a legitimate, non-discriminatory reason for the adverse employment action." *Id.* Then, "the plaintiff must adduce sufficient evidence that the proffered reason is a pretext for retaliation. Ultimately, the employee must show that 'but for' the protected activity, the adverse employment action would not have occurred." *Id.* When the protected activity and adverse employment action are very close in time, that alone is sometimes enough to establish causation at the *prima facie* stage. *Gosby*, 30 F.4th at 527.

Williams meets the first element. He engaged in a protected activity—namely, requesting additional time off for his shoulder injury. *See Delaval v. PTech Drilling Tubulars, L.L.C.*, 824 F.3d 476, 481 (5th Cir. 2016) (citation omitted). And Williams received an adverse employment action—his termination. *See* 42 U.S.C. § 12112(a). So, the Court focuses on whether Williams requesting additional time was the "but for" cause of his termination. Williams argues the fact that Shoemaker let Williams know he was fired a day after he sought additional leave creates a *prima facie* case because the firing was temporally proximate to his request.[73] The Court agrees.

---

[73] [Id. at p. 24].

Under binding Fifth Circuit law, this "very close" proximity is "enough to establish causation at the *prima facie* stage." *Gosby*, 30 F.4th at 527.

Berry must now "come forward with a legitimate, non-discriminatory reason for the adverse employment action." *Clark*, 952 F.3d at 588 (citation omitted). Berry does not. Berry's arguments focused on the fact that since their records indicate they intended to fire Williams before he sought additional leave, "there is no close temporal proximity to establish the causal connection of the *prima facie* case."[74] But this position contradicts Fifth Circuit precedent. *See Gosby*, 30 F.4th at 527. Since Berry has, therefore, not rebutted Williams' *prima facie* case, it may proceed. Accordingly, the Motion is **DENIED** as to Williams' claims for ADA-based retaliation.

### 4. Title VII and § 1981 Race Discrimination

Williams relies only on the *McDonnell Douglas* framework for his failure to promote on the basis of race claim.[75] To make a race-based failure to promote claim under *McDonnell Douglas*, a plaintiff must first establish a *prima facie* case "that (1) he was not promoted, (2) he was qualified for the position he sought, (3) he fell within a protected class at the time of the failure to promote, and (4) the defendant either gave the promotion to someone outside of that protected class or otherwise failed to promote the plaintiff because of his race." *Stelly v. Dep't of Pub. Safety & Corr. Louisiana State*, 149 F.4th 516, 522 (5th Cir. 2025) (citation omitted). Then, "the burden shifts to the defendant to proffer a legitimate, nondiscriminatory reason for not promoting the plaintiff." *Id.* Once the defendant establishes such a reason, "the

---

[74] [Doc. No. 21-1, p. 22]; [Doc. No. 24, p. 9].
[75] [Doc. No. 23, p. 27].

burden shifts back to the plaintiff to demonstrate that the proffered nondiscriminatory reason is a mere pretext for discrimination or that the plaintiff's protected characteristic was another motivating factor for the action." *Id.*

Berry argues Williams cannot make a *prima facie* case because he cannot show he was qualified for the position, for which he allegedly applied, because of his attendance issues and since he cannot show Berry hired someone outside the protected class with like attendance issues.[76] Williams responds that Berry's reasons for not promoting him are pretextual, so the Court should deny summary judgment.[77]

Williams is mistaken. Williams leapfrogs to the third prong of the *McDonnell Douglas* framework. But the Court only reaches the second and third prongs after Williams makes a *prima facie* case. *See id.* ("*Once* the plaintiff makes out a *prima facie* case, the burden shifts to the defendant.") (emphasis added). As Berry points out, however, Williams has not made a *prima facie* case since he cannot show that Berry would hire others for the position for which he applied. Since Berry has not made out a *prima facie* case, summary judgment is warranted. *See Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 317 (5th Cir. 2004) (citation omitted). Accordingly, the Motion is **GRANTED** as to Williams' claims for race discrimination.

### III. Conclusion

For the above-stated reasons,

**IT IS ORDERED**, **ADJUDGED**, **AND DECREED** that Berry's Motion for Summary Judgment [Doc. No. 21] is **GRANTED IN PART** and **DENIED IN PART**.

---

[76] [Doc. No. 21-1, p. 15].
[77] [Doc. No. 23, pp. 27, 29].

**IT IS FURTHER ORDERED**, **ADJUDGED**, **AND DECREED** that Berry's Motion is **GRANTED** as to Williams' claims for failure to accommodate under the ADA, and these claims are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED**, **ADJUDGED**, **AND DECREED** that Berry's Motion is **GRANTED** as to Williams' claims for disability discrimination under the ADA, and these claims are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED**, **ADJUDGED**, **AND DECREED** that Berry's Motion is **GRANTED** as to Williams' claims for race discrimination under Title VII and § 1981, and these claims are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Berry's Motion is **DENIED** as to Williams' claims for retaliation under the ADA.

MONROE, LOUISIANA, this 9th day of January 2026.

_____
TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE